PEARSON, MJ

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| | ) | |
| CHARLENE A. GARLAND, | ) | CASE NO.  5:09-CV-0783 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | BENITA Y. PEARSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |

Plaintiff Charlene A. Garland ("Garland") sought judicial review of the Social Security

Administration's ("Agency" or "Commissioner") final decision denying her applications for

Social Security Income and Disability Insurance Benefits pursuant to 42 U.S.C. § 405(g).[1]

Having found that the Agency's denial of benefits is based upon properly applied relevant

legal standards and supported by substantial evidence, the Court affirms the Agency's final

decision that Charlene A. Garland is not entitled to Social Security Income or Disability

Insurance Benefits.

---

[1] The parties have consented to the jurisdiction of the undersigned Magistrate Judge.
ECF No. 10.

(5:09-CV-00783)

## I.  Overview

Garland alleged disability due to silicosis, bronchitis, sinusitis, back problems, trigger finger of the right middle finger, and depression.  (Tr. 394.)  Although the Administrative Law Judge ("ALJ") found that Garland had several severe physical impairments, the ALJ ultimately determined that Garland was not disabled because she did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments and light work suitable to her physical and mental limitations was available in sufficient numbers in the national economy. (Tr. 25, 33-35.)

## II.  Procedural History

Garland was 43 years-old as of October 24, 2002, her alleged disability onset date, and qualified as a "younger person" throughout the administrative proceedings.[2]  (Tr. 34, 80, 92, 389 & 726.)  Her educational history includes obtaining a GED and starting college-level courses. (Tr. 92.)  Her past work experience includes serving as a restaurant cook, professional cleaner, production machine operator and factory worker.  (Tr. 87 & 101.)

Garland first applied for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB") on August 11, 2003 and August 23, 2003, respectively.  After denial of her applications for benefits, Garland sought and received a hearing before an ALJ who, on January 26, 2006, also denied her applications for benefits.  (Tr. 57-65.)  On January 10, 2008, the Appeals Council remanded Garland's case for further administrative review with specific instructions requiring a

---

[2]  *See* 20 C.F.R. § 404.1563(c).

-2-

(5:09-CV-00783)

supplemental hearing.[3]  (Tr. 22.)  The supplemental hearing took place on August 29, 2008.[4]

Following the supplemental hearing, Garland was, again, denied benefits.  The Appeals Council

denied her request for review, making the ALJ's decision dated October 30, 2008, the final

decision of the Agency.

Seeking judicial review of the Agency's final decision, Garland timely filed a Complaint

presenting the following issues:

1.) Did the ALJ have a valid basis for finding the plaintiff to be partially credible?

2.) Did the ALJ have substantial evidence to discount the treating source opinion on disability?

3.) Did the ALJ have substantial evidence to find that the plaintiff was capable of light work?

ECF No. 17 at 15.

### III.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining

whether there is substantial evidence to support the denial decision and whether the ALJ properly

applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681

(6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence

is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as

---

[3]  While waiting for the Appeal Council's decision, Garland re-applied for DIB and SSI on April 17, 2006 and April 19, 2006, respectively.  In accordance with the directions of the Appeals Council, those applications were consolidated with the 2003 applications denied in the ALJ's most recent – October 30, 2008 – decision.

[4]  ALJ Fred J. Guzzo presided over the first administrative hearing and passed away before the supplemental hearing, which was conducted by ALJ Mark M. Carissimi.

(5:09-CV-00783)

a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if supported by substantial evidence.

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).  The ALJ's decision must be affirmed if it is supported by substantial evidence, even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen*, 800 F.2d at 545.  "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.  *Mullen*, 800 F.2d at 545.  The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

-4-

(5:09-CV-00783)

## IV.  Standard for Establishing Disability

To establish disability under the Act, a claimant must show that she is unable to engage in substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).   The claimant's impairment must prevent her from doing her previous work, as well as any other work existing in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation.  If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends.  20 C.F.R. § 404.1520(a).  At Step One, the ALJ considers the claimant's work activity.  A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit.  At Step Two, the ALJ considers the medical severity of the claimant's impairments.  A claimant is not disabled if she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meet the duration requirement.  At Step Three, the ALJ determines whether the claimant's impairment(s) meets or equals one of the criteria of an impairment listed in Appendix 1, and also meets the duration requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is disabled if she has an impairment that meets the listing and the duration requirement.

-5-

(5:09-CV-00783)

Before considering the fourth step, the ALJ must determine the claimant's Residual

Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on

a sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether

the claimant's RFC permits her to perform past relevant work.  The claimant bears the burden of

proof at steps one through four.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

2004).  At Step Five, however, the burden shifts to the Commissioner to identify "a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469,

474 (6th Cir. 2003).

At the final step, Step Five, the ALJ considers the claimant's RFC, age, education, and

work experience to determine whether the claimant may work.  Even if the claimant's

impairment does prevent her from doing her past relevant work, the claimant is not disabled if

other work exists in the national economy that she can perform.  *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing the

five-step evaluation).

The claimant bears the ultimate burden of proof regarding the issue of disability.  *See* 20

C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled.");

*Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant

bears the ultimate burden of proof on the issue of disability.").  The burden of proof regarding the

establishment of disability onset date also lies with the claimant.  *McClanahan v. Comm'r of Soc.*

*Security*, 474 F.3d 830, 836 (6th Cir. 2006).

-6-

(5:09-CV-00783)

At Step Five of the sequential evaluation, the burden shifts to the Agency, which must then produce evidence of available work that the claimant can perform.  *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy").

## V.  **Analysis**

### A.  **Substantial Evidence Supports the ALJ's Credibility Determination**

#### 1.  **Standard for Evaluating Credibility**

In determining whether a claimant is disabled, the ALJ is required to consider all symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with objective medical evidence.  20 C.F.R. § 404.1529(a).  The ALJ must also consider the claimant's own statements about her pain and other symptoms, as well as the effect those symptoms have on the claimant's daily activities and ability to work.  *Id.*  In considering the claimant's statements regarding symptoms, the ALJ must make a credibility determination; he must ultimately decide how much to believe of what the claimant reports.  Credibility determinations regarding a claimant's subjective complaints rest solely with the ALJ.  *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393, 395 (6th Cir. 2004).

Title 20 C.F.R. § 404.1529(c)(1) provides that, if the medical signs or laboratory findings show that a claimant has a "medically determinable impairment that could reasonably be expected to produce" his or her symptoms, such as pain, then the Commissioner will evaluate the intensity and persistence of the claimant's symptoms to determine how they limit the claimant's

(5:09-CV-00783)

capacity for work.  In conducting such an evaluation, the Commissioner will consider objective

medical evidence and other evidence, including the claimant's history, the signs and laboratory

findings, statements from the claimant, statements from the claimant's treating or non-treating

source, statements from other persons, and medical opinions.  Furthermore, the Commissioner

will consider the following factors identified in 20 C.F.R. § 404.1529(c)(3):[5]

> 1. Daily activities;
> 2. Location, duration, frequency, and intensity of pain or other symptoms;
> 3. Precipitating and aggravating factors;
> 4. Type, dosage, effectiveness, and side effects of medication;
> 5. Treatment, other than medication;
> 6. Other measures used to relieve pain; and
> 7. Other factors relating to functional limitations and restrictions.

The Commissioner must also consider "whether there are any inconsistencies in the evidence,

and the extent to which there are any conflicts between [claimant's] statements and the rest of the

evidence." 20 C.F.R. § 404.1529(c)(4).

The Sixth Circuit has created a two-part test to evaluate subjective complaints of pain.

*Duncan v. Sec'y of Health & Human Servs*., 801 F.2d 847, 853 (6th Cir.1986).  According to

*Duncan*, the ALJ should initially determine "whether there is objective medical evidence of an

underlying medical condition."  *Id.*  If so, the ALJ then determines "whether objective medical

evidence confirms the severity of the alleged pain arising from the condition; or . . . whether the

objectively established medical condition is of such a severity that it can reasonably be expected

---

[5]  The ALJ is not required to analyze all seven factors in every case, but should make clear that he considered the relevant evidence.  *See Bowman v. Chater*, No. 96-3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997); *Cross v. Comm'r of Soc. Sec.,* 373 F. Supp.2d 724, 733 (N.D. Ohio 2005).

(5:09-CV-00783)

to produce the alleged disabling pain." *Id.*

In reporting the credibility of a claimant's statements, the ALJ must include specific reasons "supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *see also Cross*, 373 F. Supp.2d at 733.  Social Security Regulation 96-7p further instructs that "[t]he finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p.

### 2.  Garland's Challenges to the ALJ's Credibility Determination Are Without Merit

Garland challenges the ALJ's credibility determination on several fronts.  She mentions several findings that the ALJ failed to address, asserting that "he cannot be said to have considered the record as a whole." ECF No. 17 at 16.  She alleges that the ALJ improperly evaluated her subjective complaints of disabling pain.  Garland further asserts that the ALJ improperly found her statements concerning the intensity, persistence and limiting effects of her symptoms not credible to the extent they were inconsistent with his RFC assessment.  For the following reasons, the Court finds that the ALJ properly discounted Garland's credibility.

(5:09-CV-00783)

### a.  The ALJ Properly Applied the Correct Legal  Standard

In the instant case, the ALJ reached his credibility determination by applying the Sixth

Circuit's two-pronged test set forth in *Duncan*.[6]  *See Duncan*, 801 F.2d at 853.  As required by

this well-settled evaluative process, after finding that Garland suffered from six severe

impairments,[7] the ALJ determined that her "medically determinable impairments could

reasonably be expected to cause [her] alleged symptoms."  (Tr. 28.)  But, after evaluating the

intensity, persistence, and limiting effects of Garland's symptoms "to determine the extent to

which they limit . . . [her] ability to do basic work activities," the ALJ found Garland's

"statements concerning the intensity, persistence and limiting effects of these symptoms . . . not

credible" to the extent that those statements were inconsistent with her limited functional

capabilities, as detailed in the resultant residual functional capacity.  (Tr. 27-28.)

In support of his determination that Garland was only partially credible, the ALJ detailed

the factors that negated her credibility.  (Tr. 32.)  In his written decision, the ALJ highlighted the

findings of three examining physicians who each independently suggested that Garland's

complaints of pain exceeded their expectations based upon objective medical evidence.  First, Dr.

Loutfi Aboussouan examined Garland for lung problems in January 2004; he opined that her

"shortness of breath appeared to be disproportionate to the [Pulmonary Function Tests]."  (Tr.

---

[6]  Garland's articulation of the Sixth Circuit's standard for evaluating subjective
complaints of pain is inapposite that followed by the ALJ.  Garland, nevertheless, alleges that the
ALJ improperly conducted this evaluation.  ECF No. 17 at 17.

[7]  The ALJ found Garland had the following severe impairments: chronic bronchitis,
silicosis, degenerative disc disease of the cervical spine, right rotator cuff tendinitis, degenerative
disc disease of the lumbar spine, and depressive disorder.  (Tr. 25.)

-10-

(5:09-CV-00783)

28.) Second, Dr. Michael London examined her for shoulder and neck pain in August 2005; he stated that "it is my clinical impression that the patient's subjective complaints are greater than I would expect based upon these above abnormalities." (Tr. 29.) Finally, Dr. Jeffrey Cochran examined Garland for pain in her neck, shoulder, upper extremity, and back; he "expressed concern over multiple Waddell signs on physical examination."[8] (Tr. 29-30.)

Also, the ALJ weighed documentation of Garland's daily living activities against her self-described limitations and found them severely out of balance. (Tr. 32.) The ALJ referred to Garland's activities noted from 2003, such as golfing, biking, walking, lawn maintenance, cleaning her house and caring for pets, as well as more recent activities, including her basic functional abilities of living alone, being independent in her daily activities, and maintaining her home with the assistance of grandchildren. Garland's level of activity, the ALJ concluded, "[is] not commensurate with the degree of limitation she alleges." (Tr. 32.) The ALJ further specified that "the degree of pain she alleges is inconsistent with her ability to drive, shop, do household chores, care for grandchildren, and paint her house."[9] (Tr. 33.)

### b. The ALJ did not Err in Failing to Address Specific Findings

Garland criticizes the ALJ's failure to mention certain medical findings. Specifically, she

---

[8] Waddell signs indicate "non-organic based complaints of pain in the back" and can be indicative of malingering. (Tr. 30.) For example, Dr. Cochran indicated that Garland's "straight leg raising when done individually [was] performed to 30 degrees bilaterally with complaints of back pain . . . [but] when done simultaneously with distraction, [he] was able straight leg raise to 90 degrees with no complaints." (Tr. 639.)

[9] The ALJ referred to Garland's complaints of neck and shoulder pain twenty-four hours daily, every day of the week, as well as daily lower back pain.

-11-

(5:09-CV-00783)

asserts that the ALJ "said he relied on Dr. Cochran's findings and Dr. Cochran's

recommendation that no surgery be considered for her spinal problem," but "forgot to mention

that Dr. Cochran did recommend a surgical solution or a potential surgical solution for her full-

thickness tear of the right rotator cuff."[10]  ECF No. 17 at 15.   As Respondent urges, Garland

mischaracterizes Dr. Cochran's recommendation.   ECF No. 20 at 15.  Dr. Cochran did not

"recommend a surgical solution" or "a potential surgical solution."  Rather, by suggesting that

Garland undergo "an MRI of the right shoulder and referral to a shoulder surgeon," Dr. Cochran,

a general orthopedist and spinal surgeon, recommended a relatively noninvasive test, *i.e.*, an

MRI, and an examination by a shoulder specialist.  Also undercutting Garland's contention that

Dr. Cochran recommended surgery and that the ALJ failed to mention it, is the ALJ's literal

reference to Dr. Cochran's "recommendation" of an "aggressive resistive exercise program" for

Garland's back problems and concern over the "multiple Waddell signs" Garland exhibited.  (Tr.

30.)  The ALJ's decision contains irrefutable evidence of the attention appropriately paid to Dr.

Cochran's opinion and, as explained below, the record as a whole.  (Tr. 30.)

In addition to arguing that the ALJ failed to mention each of Dr. Cochran's

recommendations, Garland details the findings of other doctors that the ALJ also allegedly

omitted in error.  She asserts that the ALJ also "forgot to mention that . . . Dr. London noted . . .

---

[10]  Jeffrey Cochran, D.O., an orthopedic surgeon, examined Garland at Tri County
Orthopedic Surgeons, Inc. in November 2006, on referral from her primary physician, Roger
Hakim, M.D.  (Tr. 638-40.)

-12-

(5:09-CV-00783)

impingement" of her spinal nerve roots.[11]  ECF No. 17 at 15.  She then argues that, while the ALJ

acknowledged Dr. Nair's note that she was in excellent health, he "forgot to note that [Dr. Nair]

then prescribed ongoing antibiotics . . . and Paxil."[12]  ECF No. 17 at 15.  Finally, without any

apparent segue, she catalogs that four months after receiving these prescriptions, she underwent a

lung biopsy which revealed possible fibrocilicotic disease.  ECF No. 17 at 16.

The Court interprets Garland's listing of the ALJ's alleged erroneous omissions as a

suggestion that the ALJ's failure to mention certain findings indicates that he did not consider the

entire record and, therefore, did not base his decision upon substantial evidence.  Without

offering legal support, Garland asserts that "when the ALJ fails to mention significant findings

that may outweigh other findings, then he cannot be said to have considered the record as a

whole."  ECF No. 17 at 16.  Garland is mistaken.

Binding legal precedent instructs that an ALJ is not required to discuss every piece of

evidence contained in the record.  *See* Simons v. Barnhart, 114 Fed. Appx. 727, 733 (6th Cir.

2004).  "Although required to develop the record fully and fairly, an ALJ is not required to

discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not

indicate that it was not considered."  *Id.*  Just as an ALJ's failure to mention certain findings,

alone, is not evidence that the omitted findings were not considered, such an omission is also not

---

[11]  Michael London, M.D., an orthopedic surgeon, examined Garland at Omni
Orthopaedics in August 2005 (with follow-ups in December 2005 and April 2006) on referral
from her then-primary care physician, Ajay Nair, M.D.  (Tr. 29, 472-80, 615-17.)

[12]  Ajay Nair, M.D. served as Garland's primary care physician from before the alleged
disability onset date until April 2006.  (Tr. 377 & 598.)

-13-

(5:09-CV-00783)

evidence of error.  The appropriate test is whether the ALJ's credibility determination is supported by substantial evidence, not whether the ALJ has robotically referenced every medical finding in the record.[13]  If the ALJ's decision to discount Garland's credibility is supported by substantial evidence, it must be given deference.  *See Her*, 203 F.3d at 389-90.

### c.  The ALJ Was Not Obligated to Find Garland Credible Even if Her Treating Physicians Ostensibly Did

Garland asserts that "both Dr. Nair and Dr. Hakim, treating primary care physicians, believed [her] sufficiently to send her for many specialized tests and to continue to treat her," and that they "did not believe that she was in any way malingering."  ECF No. 17 at 17-18.  Garland's premise that the ALJ should have found her fully credible because her primary care physicians sent her for tests and continued treating her does not justify her conclusion that those physicians found her fully credible or, more importantly, that the ALJ's decision to discount her credibility was erroneous.

Garland's attempt to analogize her position with that giving rise to the Sixth Circuit's ruling in *Lashley v. Sec'y of Soc. Sec.* is not persuasive.[14]  *Lashley v. Sec'y of Soc. Sec.*, 708 F.2d 1048 (6th Cir. 1983).  *Lashley* instructs that "perceptible weight must be given to lay testimony

---

[13]  As a practical matter, the record in this case is nearly 800 pages. At least 90 percent of that girth is comprised of medical evidence.  If the ALJ regurgitated every statement made, important matters would be subsumed by the less important and the system of review would come to a grinding halt.

[14]In *Lashley*, the claimant was unrepresented, possessed limited intelligence and appeared easily confused.  Finding that Lashley had been denied a full and fair hearing and that evidence of mental and physical impairment was substantial, the Sixth Circuit, in a seldom used stance, remanded with instructions to award benefits.  *Lashley*, 708 F.2d at 1051, 1053.

(5:09-CV-00783)

where [] it is fully supported by reports of [] treating physicians." *Lashley*, 708 F.2d at 1054.

Unlike the lay testimony in *Lashley*, which was corroborated by four physicians, Garland's

argument that she should be deemed fully credible because her physicians sent her for tests and

continued treating her falls far short of "fully supporting" her complaints of disabling pain.[15] *Id.*

Finally, it is not insignificant that the ALJ noted that his determination that Garland was

only partially credible was, at least, partly informed by evidence of Waddell signs. (Tr. 30, 33.)

In essence, the ALJ was concerned that Garland's complaints were exaggerated or fake.

Without denying the Waddell signs, Garland, without further elaboration, simply retorts that

"these signs merely suggest a non-organic cause of pain." ECF No. 21 at 2. Against that

backdrop, Garland is reminded that substantial evidence standard presupposes that there is a

"zone of choice" within which the Agency may proceed without interference from the courts.

The instant record provides substantial evidence in support of the ALJ's credibility finding,

which clearly falls within the Agency's "zone of choice." *Mullen*, 800 F.2d at 545. Thus, the

ALJ did not err in ruling independently of Garland's treating physicians.

In sum, based upon a review of the record, the ALJ's credibility determination is not

flawed. Rather, it is supported by substantial evidence and derived from an application of

appropriate legal standards. In evaluating Garland's subjective symptoms, the ALJ considered

---

[15]   Lashley's wife testified that, among other basic activities, her husband, the claimant, was unable to even shave himself because his hands shook so badly. "Four different physicians [including two treating physicians] . . . conducted independent examinations and concluded that [the claimant] was totally and permanently disabled," corroborating the wife's lay testimony. *Lashley*, 708 F.2d at 1054. Despite the corroboration from physicians, the ALJ "did not give appropriate consideration to this testimony." *Id.* This, the Sixth Circuit found, was reversible error.

(5:09-CV-00783)

objective medical evidence and other evidence, including her statements, statements of her

physicians, and medical opinions.  The ALJ adequately discussed several of the factors identified

in 20 C.F.R. § 404.1529(c)(3),[16] properly applied the *Duncan* standard, and sufficiently

articulated his reasons for discounting Garland's credibility.  Therefore, the ALJ's credibility

finding is affirmed.

### B. The ALJ's Evaluation of the Treating Physician's Opinion is Supported by Substantial Evidence and Comports with Sixth Circuit Case Law

Garland alleges that the ALJ violated the treating physician rule by not assigning treating

physician Dr. Hakim's opinion controlling weight.[17]  She argues that Dr. Hakim's opinion

"should have been given controlling weight because it was not in sharp contrast to the other

opinions despite what the ALJ said."  ECF No. 17 at 21.  For the following reasons, the Court

finds that the ALJ did not violate the treating physician rule in discounting Dr. Hakim's opinion.

#### 1.  The Treating Physician Rule

It is axiomatic in Social Security law that the opinions of doctors identified as treating

physicians are given greater weight than that attributed to other medical care providers.  *See*

---

[16]  The ALJ mentioned Garland's daily activities, (Tr. 27, 32-33), characteristics of her pain and other symptoms, (Tr. 27, 29 & 33), types and side effects of medication, (Tr. 27, 31-32), treatments other than medication, (Tr. 30), and other factors relating to functional limitations and restrictions.  (Tr. 27, 29-33.)

[17]  Garland counts both Drs. Hakim and Nair as treating physicians.  ECF No. 17 at 17. She only claims error in the treating physician analysis relative to the ALJ's assessment of Dr. Hakim's opinion.  ECF No. 17 at 18; *see Anthony v. Astrue*, 266 Fed.Appx. 451, 458 (6th Cir. 2008) *citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

(5:09-CV-00783)

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980); *see also* SSR 96-2p; 20 C.F.R. § 404.1527(d)(2). Treating physicians' opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(d)(1); SSR 96-2p. If the ALJ does not give the treating physician's opinion controlling weight, then the ALJ must consider several other factors in determining how much weight is appropriate. Those factors include: (1) the length, frequency, nature, and extent of the treatment relationship; (2) consistency of the physician's conclusions and the evidence to support them; and (3) the specialization of the treating physician. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). The rule also creates "a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Id.* (*citing* SSR 96-2p).

An additional procedural requirement of the treating physician rule is that the ALJ, in discounting a treating physician's opinion, must provide "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p; *see also Wilson*, 378 F.3d at 544. This notice requirement is significant because it ensures that a claimant who has been denied benefits receives fair process. An ALJ's failure to follow this requirement of providing good reasons "for explaining precisely how those reasons affected the weight accorded the [physician's] opinions denotes a lack of substantial evidence, even where the conclusion of the

-17-

(5:09-CV-00783)

ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (*citing Wilson*, 378 F.3d

at 544).  The Court evaluates the ALJ's conclusions regarding Garland's treating physician's

opinion against these standards.

> **2. The ALJ Properly Applied the Treating Physician Rule in Evaluating Dr. Hakim's Opinion**

The ALJ acknowledged Dr. Roger Hakim's treating relationship with Garland, and

"considered his opinion in accordance with 20 C.F.R. 404.1527 and 416.927."[18]  (Tr. 30.)  Dr.

Hakim expressed his opinion *via* a medical source statement for the Ohio Department of Jobs

and Family Services, which he completed on October 1, 2007.  (Tr. 30, 688-89.)  On that form,

Dr. Hakim indicated that Garland suffered from "degenerative disc disease in [her] cervical and

lumbar spine, partial rotator cuff tear [of the right] shoulder, Silicosis [of the right] lung, [and]

degenerative joint disease [in her] hands [and] shoulder," with "poor" and "deteriorating" status.

(Tr. 688.)  Under "Physical Functional Capacity Assessment," Dr. Hakim indicated that Garland

had significant limitations.  (Tr. 30 & 689.)  Specifically, he opined that her standing/walking

ability was "limited to 2-3 hours," and only "two hours" without interruption.  (Tr. 30 & 689.)

Despite indicating that sitting was not affected, Dr. Hakim wrote that Garland could only sit for 4

hours in an 8-hour workday, and for only 2 hours without interruption.  (Tr. 30 & 689.)  Dr.

Hakim further opined that she could lift/carry 6-10 pounds frequently and 6-10 pounds

occasionally.  (Tr. 30 & 689.)  Then, in a series of boxes, he indicated that Garland was

"markedly limited" in pushing/pulling, "moderately limited" in bending, reaching, and handling,

---

[18]  The parties do not dispute Dr. Hakim's status as a treating physician.

-18-

(5:09-CV-00783)

"not significantly limited" in repetitive foot movements, and not limited in seeing, hearing, or speaking.  (Tr. 30 & 689.)  Dr. Hakim based his findings on "X-ray reports, MRI, consultation [with an] orthopedist, [and] thoracic surgeon."  (Tr. 30 & 689.)

After considering the "opinions and imaging relied on by Dr. Hakim," the ALJ concluded that "the opinions and evidence . . . do not support the limitations he imposed."  (Tr. 30.)  The ALJ recognized that Dr. Hakim expressly relied on his referral to Dr. Cochran, and pointed out that Dr. Cochran had "recommended aggressive exercise rather than limiting [Garland's] activity."  (Tr. 30.)  Ultimately, the ALJ found that Dr. Hakim's opinions limiting lifting/carrying and pushing/pulling were supported by an MRI which showed tendon tears in Garland's right shoulder.  (Tr. 31 & 662.)  Therefore, the ALJ adopted Dr. Hakim's limitation on lifting/carrying, and limited Garland to pushing/pulling 10 pounds occasionally and 5 pounds frequently.[19]  (Tr. 31.)  But since Dr. Hakim's opinion regarding Garland's inability to sustain an 8-hour workday "exceeded the evidence [of record]" and was "inconsistent with opinions of physicians who specialize in orthopedics," the ALJ decided to give this opinion "minimal weight."  (Tr. 32.)

Garland argues that the ALJ violated the treating physician rule by discounting Dr. Hakim's opinion and failing to articulate his reasons for doing so.  Specifically, she charges that

---

[19] Dr. Hakim opined that Garland should be limited to lifting and carrying up to 10 pounds but did not assign a weight limitation to his recommendation of Garland's ability to push and pull.  (Tr. 31.)  The ALJ, out of necessity, assigned the weight specifications above based on the record, including Dr. Hakim's 10-pound lifting and carrying threshold and Garland's right shoulder MRI.  (Tr. 31.)  A claimant's Residual Functional Capacity is an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(2).  The ALJ bears the responsibility for assessing a claimant's Residual Functional Capacity, based on all of the relevant evidence.  *See* 20 C.F.R. § 404.1545(a)(3)

(5:09-CV-00783)

"his opinion should have been given controlling weight because it was not in *sharp* contrast to other opinions despite what the ALJ said." ECF No. 17 at 21 (emphasis added).  Governing case law and regulation requires the treating physician's opinion be given controlling weight only when it is both well-supported and not inconsistent with other substantial evidence.  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  Dr. Hakim's opinion fails this conjunctive test.[20]

As the Commissioner correctly points out, Dr. Hakim's assessment was contradicted by the opinions of two specialists – Dr. Cochran and Dr. London – and Dr. Hakim's own prior opinion.[21]  ECF No. 20 at 17-18.  Contradictory evidence presented by a medical source with specialization is precisely the type of evidence qualified to rebut the presumption of controlling typically enjoyed by a treating physician's opinion.  *See Rogers*, 486 F.3d at 242.

Most notably, Dr. Hakim's opinion is contradicted by Dr. Cochran, the orthopedic specialist to whom Dr. Hakim referred Garland in November 2006.  (Tr. 638-40.)  Dr. Hakim

---

[20]  Garland's reliance on the Sixth Circuit's ruling in *Hensley v. Astrue*, 573 F.3d 263 (2009), is misplaced.  ECF No. 17 at 19.  Contrary to Garland's description, *Hensley* reiterates without expanding the Sixth Circuit's ruling in *Wilson*.  In *Hensley*, the ALJ ran afoul of *Wilson* by failing to explain his reasons for rejecting the opinion of a treating physician.  Recognizing that conflicting medical opinions populate most cases, the Sixth Circuit rebuffed the ALJ's attempt to decline to give controlling weight to a treating physician "simply because another physician . . . reached a contrary conclusion." *Hensley*, 573 F.3d at 266.  The instant case suffers from no such frailty.  As described herein, Dr. Hakim's opinion was contradicted by ample other medical evidence, including his own prior opinion, and not supported by the medical evidence in the record.

[21]  In December 2006, less than a year prior to his completion of the medical source statement at issue, Dr. Hakim had submitted a report to the Bureau of Disability Determination which indicated that Garland had "no anatomical deformities." (Tr. 30, 641-43.)  While noting that her "active motion is slightly limited due to pain," Dr. Hakim concluded that her "passive movements are good," and described both her gait and her ability to do fine and gross manipulation as "normal." (Tr. 30 & 642.)

(5:09-CV-00783)

credited Dr. Cochran's  "consultation-orthopedic" as part of the medical evidence that led him to

his findings, yet Dr. Hakim recommended that Garland be strictly limited in standing, walking,

and sitting while  Dr. Cochran recommended "an aggressive resistive exercise program for

[Garland's] cervical and lumbar regions."  (Tr. 30. 640 & 689.)

    Similarly, Dr. London's credibility determination contradicts Dr. Hakim's.  After

reviewing her cervical spine and right shoulder MRIs, Dr. London, an orthopedic surgeon, found

Garland's complaints of constant, diffuse, disabling pain greater than complaints that would be

supported by her physical abnormalities.  (Tr. 473.)  Dr. Hakim, however, fully credited

Garland's complaints in assessing her physical capabilities.

    Garland also appears to find fault with the ALJ's use of multiple opinions in crafting his

 Residual Functional Capacity assessment and subsequent hypothetical.  She points specifically

to the fact that the ALJ used "some of [Dr. Hakim's] limitations but not all."  ECF No. 17 at 20.

Referring to Drs. Cochran, London, and Cox (the medical expert who testified at the

administrative hearing), Garland states that "the ALJ did not actually rely on any of those

evaluations."  ECF No. 17 at 20.  The ALJ expressly stated, however, that he "relied substantially

on the opinion of Dr. Cox regarding the residual functional capacity" because, unlike every other

medical source, "Dr. Cox had the opportunity to review the record of evidence in its entirety and

was able to consider opinions of other physicians in the record."  (Tr. 31.)  The ALJ adopted Dr.

Cox's recommendations on standing, walking, sitting, climbing, crawling, stooping, avoiding

work above the shoulder, avoiding extreme heat or cold, avoiding smoke and fumes, and

avoiding confrontation.  (Tr. 26 & 31.)  He found those limitations to be "consistent with the

(5:09-CV-00783)

evidence." (Tr. 31.)  But "giving all benefit of doubt to the claimant," he adopted Dr. Hakim's

limitations on lifting, carrying, pushing, and pulling "because there is objective support for that

portion of his opinion."[22]  (Tr. 31-32.)  The ALJ obviously relied upon Dr. Hakim's findings to

the extent they were well-supported, in deference to the treating physician rule and the unique

perspective a treating physician offers.

　　　　The Agency requires ALJs to give reasons for not fully crediting a treating physician's

opinion in order to help claimants to understand "why the administrative bureaucracy deems

them not disabled when physicians are telling them that they are" disabled.  *Smith*, 482 F.3d at

876.  This justification for the "good reasons" rule "'exists, in part, to let claimants understand

the disposition of their cases,' particularly in situations where a claimant knows that his

physician has deemed him disabled and therefore 'might be especially bewildered when told by

an administrative bureaucracy that [he] is not, unless some reason for the agency decision is

supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)).  In

this case, the ALJ appropriately observed this rule.

　　　　The ALJ's decision to discount Dr. Hakim's opinion is supported by substantial evidence

and is adequately articulated by sufficiently specific reasons, *i.e.*, "good reasons."  The ALJ

adopted those portions of Dr. Hakim's opinion that are supported by objective evidence, and

discounted only the opinions that conflict with other evidence in the record and are not supported

by objective evidence.  Because Dr. Hakim's entire opinion is not "well supported by medically

---

[22] The ALJ found that Garland's right shoulder MRI supported this portion of Dr.
Hakim's opinion.

(5:09-CV-00783)

acceptable data" and is "inconsistent with other substantial evidence of record," it was not entitled to controlling weight.  *See Bogle*, 998 F.2d at 347-48; 20 C.F.R. § 404.1527(d)(1); SSR 96-2p.  Further, the ALJ considered the consistency of Dr. Hakim's conclusions with that of and weighed his status as a general practitioner against that of the orthopedic specialists who issued contradicting opinions.  *See Rogers*, 486 F.3d at 242; 20 C.F.R. § 404.1527(d)(5).  The law does not mandate the adoption of a treating physician's findings that are not well-supported or are inconsistent with other evidence.  Therefore, the ALJ did not violate the treating physician rule in discounting portions of Dr. Hakim's opinion and, thereby, assigning it less than controlling weight.

**C.**   **Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination**

Garland argues that substantial evidence does not support the ALJ's finding that she was capable of light work.  She points to the two hypothetical questions that the ALJ asked the Vocational Expert ("VE"), one based on the ALJ's Residual Functional Capacity findings, and the other based on the proposed limitations of her treating physician, Dr. Hakim.  Garland asserts that "because the second hypothetical question more clearly described [her], and . . . was based on what should have been given controlling weight, it should have been the basis for the decision."  ECF No. 17 at 21.  For the following reasons, the Court finds that the first hypothetical question – the hypothetical relied upon by the ALJ – was the correct basis for the decision, and that the ALJ therefore had substantial evidence to find Garland capable of light work.

-23-

(5:09-CV-00783)

A claimant's Residual Functional Capacity is an indication of that individual's work-related abilities despite her limitations.  *See* 20 C.F.R. § 404.1545(a)(1).  A Residual Functional Capacity is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R.§ 404.1527(e)(2).  As such, the ALJ bears the responsibility for assessing a claimant's Residual Functional Capacity, based on all of the relevant evidence.  *See* 20 C.F.R. § 404.1545(a)(3).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.  It is well-established that the substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen*, 800 F.2d at 545 (*quoting Baker*, 730 F.2d at 1150). The ALJ's decision must be affirmed if it is supported by substantial evidence, even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion.  *See Her*, 203 F.3d at 389-90; *Mullen*, 800 F.2d at 545.

After determining the claimant's Residual Functional Capacity, the ALJ considers whether that Residual Functional Capacity permits her to perform past relevant work.  If the claimant is unable to perform past relevant work, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  If other work exists in the national economy that the claimant can perform, then the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In order to meet this burden, the Commissioner must show "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health &*

-24-

(5:09-CV-00783)

*Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted).  This substantial

evidence may be produced through the response of a vocational expert to a hypothetical question,

"but only if the question accurately portrays [plaintiff's] individual physical and mental

impairments." *Varley*, 820 F.2d at 779 (internal citations omitted).

In this case, the ALJ determined that Garland has the Residual Functional Capacity to

perform light work, with the above-mentioned restrictions.  Ted Macy, the VE, testified that

Garland's past relevant work ranged from heavy to light and from skilled or semi-skilled to

unskilled.  (Tr. 33, 767-68.)  Based upon the ALJ's Residual Functional Capacity assessment, the

ALJ determined that Garland was "unable to perform past relevant work."  (Tr. 33.)

During the administrative hearing, the ALJ posed two hypothetical questions and asked

the VE to discern whether jobs exist for such hypothetical claimants.  The first question involved

a hypothetical 43 year-old claimant with a GED (like Garland), and with the physical limitations

that the ALJ had imposed on Garland in his Residual Functional Capacity determination.  (Tr.

34, 768-69.)  The VE testified that such a claimant could perform jobs that exist in significant

numbers, such as "bench assembler, wire worker, and final assembler."  (Tr. 34, 769-71.)  In the

second hypothetical, the ALJ described a claimant with the physical limitations suggested by Dr.

Hakim.  (Tr. 771.)  The VE testified that such a claimant could not perform any competitive full-

time work.  (Tr. 771.)  Because the ALJ had already discounted Dr. Hakim's opinion in crafting

his Residual Functional Capacity assessment, the ALJ appropriately relied upon the first

hypothetical in concluding that Garland is capable of adjusting to other existing work and,

therefore, not  disabled.  (Tr. 35.)

-25-

(5:09-CV-00783)

As a logical follow-up to her argument that the ALJ improperly discounted the opinion of her treating physician, Garland argues that the ALJ should have relied on the second hypothetical.  She asserts that "the second hypothetical more clearly described [her], and . . . was based on [Dr. Hakim's opinion that] should have been given controlling weight."  ECF No. 17 at 21.  As discussed above, however, the ALJ appropriately relied upon Dr. Hakim's opinion to the extent it was well-supported and not inconsistent but declined to give Dr. Hakim's opinion controlling weight.  Given that the ALJ properly crafted a Residual Functional Capacity for Garland which included the portions of Dr. Hakim's opinion that were supported by substantial evidence, he was also correct in relying on the VE's response to the hypothetical question that reflected that same Residual Functional Capacity.  Therefore, the ALJ's Residual Functional Capacity assessment and ultimate decision that Garland can adjust to other work is supported by substantial evidence and within the "zone of choice" wherein the Agency may proceed without interference from the courts.  In other words, the Commissioner has met his Step Five burden.

**VI.  Conclusion**

The ALJ presented valid reasons for discounting Garland's credibility.  Further, the ALJ properly evaluated the medical opinion evidence, including the opinions of Garland's treating physicians.  Substantial evidence exists to support the ALJ's Residual Functional Capacity and his overall determination that Garland is not disabled.

For all of the reasons given above, the Court finds the Agency's final decision that Charlene A. Garland is not disabled and, therefore, not entitled to Disability Insurance Benefits or Social Security Income is based upon proper legal standards and supported by substantial

(5:09-CV-00783)

evidence.  Accordingly, the Agency's decision denying benefits is AFFIRMED.


      IT IS SO ORDERED.


August 6, 2010                                   _s/ *Benita Y. Pearson*_
Date                                                  United States Magistrate Judge

(5:09-CV-00783)